IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMEO V. APOSTOL,<br><br>       Plaintiff,<br><br>   v.<br><br>CASTRO VALLEY UNIFIED SCHOOL DISTRICT, et al.,<br><br>       Defendants.<br>_____ / | No. C 09-02676 JSW<br><br>**ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is the motion for summary judgment filed by defendants Castro Valley Unified School District (the "District"), Sherri Beetz ("Beetz"), Charlotte Irwin ("Irwin") and Tim DeForest ("DeForest") (collectively, "Defendants"). This motion is fully briefed and ripe for decision. The Court finds this motion is suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for October 28, 2011, is VACATED. Having carefully considered the parties' papers, the relevant legal authority and the record in this case, the Court hereby grants in part and denies in part Defendants' motion for summary judgment.[1]

---

[1] Apostol objects to the exhibits I, K, L, M, N, Q, and U attached to the declaration of Nancy A. McPherson ("McPherson Decl."), as well as the paragraphs in her declaration that these exhibits are true and correct copies of the documents on the grounds that McPherson fails to show that she has personal knowledge of and is competent to testify regarding these documents. McPherson is an attorney. The documents at issue are documents of the District and Apostol's medical forms. McPherson does not explain how she has personal knowledge regarding these documents. Therefore, the Court SUSTAINS Apostol's evidentiary objections.

The Court GRANTS Apostol's motion to seal his medical records and GRANTS his motion to seal. Accordingly, by no later than November 4, 2011, Defendants shall publicly file redacted versions of the their motion for summary judgment, the McPherson Decl., and

**BACKGROUND**

Plaintiff Romeo Apostol ("Apostol") filed this employment discrimination action against his former employer the District, Irwin, the Custodial Operations Supervisor, Beetz, the Assistant Superintendent of Human Resources, and DeForest, Apostol's supervisor. Apostol worked as a custodian for the District from March 1994 through September 22, 2008. Apostol brings claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983 ("Section 1983"), and the Family Medical Leave Act ("FMLA").

The Court will address additional specific facts as required in the analysis.

**ANALYSIS**

**A.    Standards Applicable to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an

---

the declaration of Sherri Beetz and shall file these medical records and the portions of their motion and these declarations that refer to these medical records under seal.

1  essential element of the non-moving party's claims or that party must show that the non-moving
2  party does not have enough evidence of an essential element to carry its ultimate burden of
3  persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.
4  2000). Once the moving party meets its initial burden, the non-moving party must go beyond
5  the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine
6  issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care adequately to point a court to the evidence precluding summary judgment because a court is "'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.   Defendants' Motion.**

**1.   Apostol's Disability Discrimination Claim.**

Apostol asserts a claim of disability discrimination under the ADA. In order to prevail on this claim, Apostol first must establish a *prima facie* case of discrimination. *See, e.g., Raytheon Co. v. Hernandez,* 540 U.S. 44 (2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To present a *prima facie* case of disability discrimination, Apostol must show that: (1) he is disabled under the Act; (2) he is "otherwise qualified" for the position, with or without a reasonable accommodation; and (3) he suffered an adverse employment action because of his disability or was denied a reasonable accommodation. *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 (9th Cir. 1999). If Apostol establishes his *prima facie* case, the burden shifts to Defendants to offer a legitimate non-discriminatory reason for the adverse action. If Defendants proffer such a reason, the burden shifts back to Apostol to show that Defendants'

3

reason is actually a pretext for discrimination. *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990) (citing *Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir. 1987)).

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12012(2); *see also* 29 C.F.R. § 1630.2(g). The Supreme Court has held that "substantially limits" means that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives" and which also is "permanent or long term." *Toyota Motor Mfg. Co., Kentucky, Inc. v. Williams*, 534 U.S. 194, 199 (2002); *see also Sutton v. United Airlines, Inc.*, 527 U.S. 471, 492 (1999) (noting that "'substantially' suggests 'considerable' or 'specified to a large degree'"); 29 C.F.R. § 1630.2(j)(1) ("substantially limits" means "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity").[2]

Apostol contends that he was disabled under the ADA when he suffered from plantar faciitis and was partially restricted in his ability to walk for approximately three months. Between May 7 and July 31, 2008, doctors imposed varying restrictions on Apostol's ability to stand and/or walk at work ranging from as little as fifteen minutes per hour over an eight hour period and as much as fifty minutes per hour over an eight hour period. (Declaration of Romeo V. Apostol ("Apostol Decl."), Exs. F, H, J, and L through P.) It is undisputed that all restrictions on his walking and/or standing were lifted on July 31, 2008. There is no evidence in the record which shows, and Apostol does not argue, that he suffered from plantar faciitis after this date.

---

[2] 29 C.F.R. § 1630.2 also sets forth factors used to determine if an individual is substantially limited in a major life activity. *Id.* § 1630.2(j)(2.)

4

Generally, temporary conditions do not qualify as a disability under the ADA. *See* 29 C.F.R. Part 1630 App., § 1630.2(j) ("temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza."); *see also Sanders v. Arneson Products, Inc.*, 91 F.3d 1351 (temporary condition which lasted less than four months was not a disability under the ADA) (citing 29 C.F.R. Part 1630 App., § 1630.2(j)); *Johnson v. City and County of San Francisco*, 2001 WL 263298, *4 (N.D. Cal. March 8, 2001) ("the ADA does not cover disabilities which are temporary in nature").

Although ADA does not explicitly state that temporary conditions do not constitute disabilities, the regulations list three factors to consider in determining whether an individual is substantially limited in a major life activity, two of which relate to the duration of the impairment and impact. *See* 29 C.F.R. § 1620.2(j). The factors are: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id*. The regulations specifically list broken limbs as an impairment which is "temporary, non-chronic" and does not amount to a disability. *See* 29 C.F.R. Part 1630 App., § 1630.2(j). Plantar faciitis is akin to a broken leg or foot. For a period of time, a person with a broken leg or foot would be restricted in their ability to walk. However, after the injury heals, the person would be able to walk again, unaffected by the impairment. Similarly here, Apostol was restricted in his ability to walk for a period of time. However, within three months, he had no restrictions on his ability to walk or stand.

Apostol argues that temporary injuries are not per se unprotected under the ADA. In support, Plaintiff cites to dicta in *Diaz v. Fed. Express Corp*., 373 F. Supp. 2d 1034, 1046 (C.D Cal. 2005). In *Diaz*, when determining whether an impairment which lasted approximately six months qualified as a disability under the California Fair Housing and Employment Act, the court noted that there was some uncertainty with respect to whether, as a matter of law, a temporary impairment could not constitute a disability under the ADA. *Id*. However, in an

5

earlier opinion, the same court acknowledged that the plaintiff's temporary condition would not qualify as a disability under the ADA. *See Diaz v. Fed. Express Corp.*, 2004 WL 5402500, *18 (C.D. Cal. Aug. 18, 2004). Notably, Apostol did not cite to, and the Court did not find, any cases in which an impairment which lasted less than three months, and there were no permanent or long-term impacts, qualified as a disability under the ADA. Thus, while the Court need not find that all temporary impairments are categorically excluded from protection under the ADA, the Court does find that Apostol fails to show there is a disputed question of fact regarding whether his plantar faciitis substantially limited his ability to walk. Accordingly, the Court grants Defendants' motion for summary judgment on Apostol's ADA claim.

### 2. Apostol's Section 1983 Claim.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Lebbos v. Judges of Superior Court*, 883 F.2d 810, 817 (9th Cir. 1989). Apostol contends that Defendants violated his right to freedom of speech. A First Amendment retaliation claim against a government employer involves

> a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

The threshold and "essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest." *Desrochers v. City of San Bernadino*, 572 F.3d 703, 709 (9th Cir. 2009) (citing *Connick v. Meyers*, 461 U.S. 138, 147 (1961)). Such an "inquiry is purely a question of law." *Eng*, 552 F.3d at 1070; *see also Connick*, 461 U.S. at 148 n.7 ("The inquiry into the protected status of speech is one of law, not fact."). "To address a matter of public concern, the content of [Plaintiff's] speech must involve 'issues about which information

6

is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983)). "On the other hand, speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Id*. (internal citations and quotations omitted). Whether a public employee's speech or expressive conduct involves a matter of public concern depends on the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. A public employee's speech deals with a matter of public concern when it "can fairly be considered as relating to a matter of political, social, or other concern to the community." *Voigt v. Savell*, 70 F.3d 1552, 1559 (9th Cir. 1995). "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995).

As the Ninth Circuit noted in *Desrochers*, "not all comments on perceived deficiencies in the functioning of a government office amount to speech on a matter of public concern." 572 F.3d at 711 n.7. In *Desrochers*, two police sergeants argued that their grievances about their superior officers' management practices implicated the "competency," "preparedness," "efficiency," and "morale" of the police department. *Id*. at 710. The Ninth Circuit concluded, however, that their grievances did not address a public concern because the passing references to public safety were merely incidental to their complaints about their superior officers, which included a "long history of inappropriate and harassing comments given to coworkers, peers and subordinates." *Id*. at 708, 711. The *Desrochers* court recognized that "the reality that poor interpersonal relationships amongst coworkers might hamper the work of a government office does not automatically transform speech on such issues into speech on a matter of public concern." *Id*. The *Desrochers* court distinguished the police sergeants' grievances from speech that related to matters of public concern: "There is a significant distinction between complaints

7

1  of a poor working relationship with one's superior and complaints involving on-the-job
2  consumption of alcohol, anti-Semitism, use of excessive force, discrimination, and allegations
3  of racial and gender bias." 572 F.3d at 711 n.7.
4        Here, Apostol complained to his supervisor and to other District employees about the
5  hiring of a consultant, Myron Zurich, and the consultant's proposed plan to implement the
6  "Roving Crew Custodian Program." However, his complaints included comments that the
7  hiring of Mr. Zurich and the proposed plan were a waste of taxpayer money. (Apostol Decl., ¶
8  6; Declaration of Alden K. Lee ("Lee Decl."), Ex. B (Deposition of Romeo V. Apostol
9  ("Apostol Depo.") at 217:14-21.).) Considering the context in that Apostol complained only
10 internally, to District employees, and that he was complaining about a program that would
11 affect his position, the Court finds that the question of whether Apostol's speech was on a
12 matter of public concern is a close call. Nevertheless, because Apostol submits evidence to
13 show that he complained about taxpayer money being wasted, and not just about his internal
14 concerns regarding his job, the Court cannot find as a matter of law that his speech only
15 concerned his private interests and that he was only speaking as an employee.
16       Nevertheless, Apostol does not submit sufficient evidence to show that his speech was a
17 substantial or motivating factor for Ms. Irwin's conduct, that she did not have an adequate
18 justification for her conduct, and that, absent Apostol's complaints, the District and Ms. Irwin
19 would have engaged in the same conduct. Apostol's states that, after he complained about the
20 program, Ms. Irwin watched him more closely than she watched other employees, took
21 photographs of him and his work, and failed to provide his sufficient materials for his job.
22 (Apostol Decl., ¶¶ 28-31.) Based on the timing in that Ms. Irwin observed him and took
23 pictures of him after he complained, he believes his complaints were the reason for this
24 scrutiny. However, Ms. Irwin only became his supervisor at this time. Notably, Apostol does
25 not ever state that he complained directly to Ms. Irwin about the wasting of taxpayer money, or
26 that she was aware of these complaints. She states in her declaration that she did not retaliate
27 against Apostol for any of his criticisms or complaints and that she treated him the same as
28 everybody else. (Declaration of Charlotte Irwin, ¶¶ 6, 8, 9, 20, 21.) She further states that she

8

1 observes all custodians on the job and did not single out Apostol for any greater scrutiny. (*Id.*,
2 ¶¶ 20, 21.) Apostol does not have any evidence to the contrary. Because he does not have any
3 evidence that Ms. Irwin was even aware that he complained about taxpayer dollars being
4 wasted, or any evidence that, other than his belief, that she treated him differently than other
5 custodians after and as a result of such complaints, the Court finds that Apostol fails to
6 demonstrate the existence of a genuine issue of material fact.

7 Additionally, the Court finds that the individual defendants are entitled to qualified
8 immunity on Apostol's Section 1983 claim. "Qualified immunity shields federal and state
9 officials from money damages," unless a plaintiff demonstrates "(1) that the official violated a
10 statutory or constitutional right, and (2) that the right was "clearly established" at the time of the
11 challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v.
12 Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "protects 'all but the plainly
13 incompetent or those who knowingly violate the law.'" *Id*. (quoting *Malley v. Briggs*, 475 U.S.
14 335, 341 (1986)). This standard leaves "ample room for mistaken judgments." *Malley* at 343.
15 Apostol fails to submit any evidence to show that Ms. Irwin, or any of the other individual
16 defendants, knowingly violated the law or was plainly incompetent. Accordingly, the Court
17 grants Defendants' motion on Apostol's Section 1983 claim.

18     **3.    Apostol's FMLA Claim.**

19 Apostol alleges that he requested, but was denied, leave under FMLA. Defendants
20 move for summary judgment on this claim on the grounds that Apostol never actually requested
21 any leave under FMLA. However, Apsotol submits evidence that he submitted a form
22 requesting leave under FMLA, but that he hasn't seen a copy of it since he submitted it.
23 Therefore, there is a question of fact regarding whether he requested leave under FMLA.
24 Accordingly, the Court denies Defendants' motion for summary judgment on this claim.[3]

---

[3] Although Defendants argue that the evidence is insufficient to support liability by Beetz, Irwin, or DeForest, Defendants do not directly address the facts at issue with respect to Apostol's FMLA claim. Additionally, although Defendants argue that Beetz, Irwin, or DeForest are entitled to qualified immunity, they argue that "[n]one of the individual defendants violated plaintiff's constitutional rights. They do not make this argument with respect to Apostol's *statutory* rights. Therefore, the Court finds that Defendants have not

9

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment. The Court GRANTS Defendants' motion for summary judgment as to Apostol's claim under the ADA and Section 1983, but DENIES Defendants' motion as to Apostol's claim under FMLA.

Pursuant to Northern District Civil Local Rule 72-1, this matter is HEREBY REFERRED to a randomly assigned Magistrate Judge for purposes of conducting a settlement conference, to be completed within sixty days, if possible.

**IT IS SO ORDERED.**

Dated: October 27, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

met their initial burden to show the absence of a material fact regarding the liability of Beetz, Irwin, or DeForest on Apostol's FMLA claim. Accordingly the Court denies Defendants' motion to the extent they were seeking adjudication of the individual liability of Beetz, Irwin, or DeForest on Apostol's FMLA claim.

10